**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**PAMELA M. YATES,**

                           **Plaintiff,**

                **v.**                          **5:06-CV-1406**
                                                           **(FJS)**

**COMMISSIONER OF SOCIAL SECURITY,**

                          **Defendant.**
_____

| **APPEARANCES** | **OF COUNSEL** |
|---|---|
| **OLINSKY & SHURTLIFF, LLP**<br>300 South State Street<br>5th Floor<br>Syracuse, New York 13202<br>Attorneys for Plaintiff | **JAYA A. SHURTLIFF, ESQ.** |
| **SOCIAL SECURITY ADMINISTRATION**<br>**OFFICE OF REGIONAL**<br>**GENERAL COUNSEL - REGION II**<br>26 Federal Plaza - Room 3904<br>New York, New York 10278<br>Attorneys for Defendant | **DENNIS J. CANNING, ESQ.** |

**SCULLIN, Senior Judge**

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

Plaintiff Pamela M. Yates brought this action pursuant to the Social Security Act (the "Act"), 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner"), denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits for lack of disability.

Currently before the Court are Plaintiff's and Defendant's cross-motions for judgment on the pleadings. *See* Dkt. Nos. 5, 6.

**II. BACKGROUND**

**A.   Procedural history**

Plaintiff filed applications for SSI and DIB on May 10, 2004. *See* Administrative Record ("AR") at 39-41, 43, 271-74. In her disability report, Plaintiff cited a herniated disc, spinal stenosis, fibromyalgia, and carpal tunnel syndrome as her limiting conditions. *See id*. at 47. The Social Security Administration denied Plaintiff's claim on July 28, 2004. *See id*. at 30. Plaintiff filed a timely request for a hearing on September 28, 2004, which was held before ALJ James S. Quinlivan, in Syracuse, New York, on June 13, 2005. *See id*. at 33, 289. Attorney Howard Olinsky represented Plaintiff, who appeared and testified. *See id*. at 289, 291. Jay Steinbrenner, a vocational expert ("VE"), also appeared and testified. *See id*. at 289, 308.

ALJ Quinlivan considered the case *de novo* and issued a written decision on November 23, 2005. *See* AR at 15-23. In his decision, the ALJ stated that he carefully considered the evidence in

the record and made the following findings:

> 1) Plaintiff met the nondisability requirements for a period of disability and DIB, and was insured for benefits through the date of the ALJ's decision.
>
> 2) Plaintiff had not engaged in substantial gainful activity ("SGA") since the alleged onset of the disability.
>
> 3) Plaintiff's fibromyalgia-type neck pains; cervical spine degenerative arthritis/disc herniation with carpal tunnel symptomology and diminished vision were considered "severe" based on the regulations.
>
> 4) These medically determinable impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings").
>
> 5) Plaintiff's allegations regarding her limitations were not totally credible.
>
> 6) Plaintiff had the following residual functional capacity: lift/carry twenty pounds occasionally, and ten pounds frequently; occasionally push/pull with the upper extremities; no sustained overhead work; no job requiring the use of hand-held power tools; no work at unprotected heights; no work in the vicinity of heavy moving machinery; or otherwise exposure to excessive floor vibrations; no operation of mobile equipment; no commercial driving; no extensive writing or special operation of keyboards; occasional forceful gripping maneuvers; no exposure to temperature extremes; and no work in damp or humid conditions. Plaintiff should be permitted to wear corrective lenses as needed.
>
> 7) Plaintiff's past relevant work as a wallpaper/paint store clerk did not require the performance of work-related activities that her RFC precluded.
>
> 8) Plaintiff's medically determinable myofascial neck pains, cervical spine degenerative arthritis/disc herniation with carpal tunnel symptomology, and diminished vision do not prevent Plaintiff from performing her past relevant work.
>
> 9) Plaintiff was not under a "disability," as defined in the Act, at any time through the date of the ALJ's decision.

*See* AR at 22.

The ALJ's decision became the Commissioner's final decision on September 22, 2006, when the Appeals Council of the Social Security Administration denied Plaintiff's request for review. *See* AR at 4-6.

Plaintiff commenced this action on November 21, 2006, *see* Dkt. No. 1, and filed a supporting brief on March 22, 2007, *see* Dkt. No. 5. Defendant filed a response brief on March 29, 2007. *See* Dkt. No. 6.

### B.   Plaintiff's medical history

Plaintiff saw Dr. Joy Dolorico on July 3, 2003, for a rheumatological consultation. *See* AR at 108. Plaintiff's symptoms consisted of headaches and generalized pain in her shoulders, arms, back, neck, and legs for approximately two years. *See id*. She also experienced sleeping difficulty. *See id*. Dr. Dolorico diagnosed Plaintiff with fibromyalgia and advised her to swim and engage in aerobic exercise. *See id*. at 107. She returned to Dr. Dolorico on July 31, 2003, and Dr. Dolorico found that Plaintiff had full range of motion, albeit with some stiffness, and concluded that Plaintiff had fibromyalgia and a herniated disc at C5-C6. *See id*. at 106. Plaintiff saw Dr. Jonathan Braiman, a neurologist, on August 4, 2003. *See id*. at 109. Dr. Braiman diagnosed her with "mild to moderate" carpal tunnel syndrome and "mild to moderate" C6-C7 radiculopathy. *See id*. at 110.

Plaintiff returned to her primary care physician, Dr. Ram, on August 6, 2003, complaining of aching and numbness in her arms and pain radiating down both arms. *See* AR. at 118. Dr. Ram noted tenderness of the cervical musculature, cervical disc disease, and spinal stenosis; the doctor prescribed pain medications and referred Plaintiff to Dr. Bruce Frederickson. *See id*. at 118-19. Dr.

Frederickson examined Plaintiff on February 5, 2004, and found diminished sensation in Plaintiff's hands, as well as bulging at C5-C6. *See id*. at 168-69. He concluded that Plaintiff had a "minor degree" of spinal cord irritation and "some degree" of radiculopathy and referred her to a hand surgeon for her carpal tunnel syndrome. *See id*. at 169. Plaintiff saw the hand surgeon, Dr. Brian Harley, on March 19, 2004. *See id*. at 166. She reported a history of right wrist pain, numbness, and tingling. *See id*. at 165. Dr. Harley concluded that Plaintiff was a good candidate for carpal tunnel release surgery. *See id*. at 166. Dr. Harley performed this surgery on May 26, 2004. *See id*. at 163. Post-operatively, Plaintiff stated that her numbness was gone and that her fingers felt "quite good." *See id*.

Plaintiff returned to Dr. Ram on June 14, 2004, for a follow-up examination regarding her neck and arm pain. *See* AR at 195. The examination revealed tenderness of the cervical musculature and reduced range of motion, and Dr. Ram concluded that Plaintiff had chronic neck and back pain due to disc disease and fibromyalgia. *See id*. at 196. Dr. Ram also opined that Plaintiff's pain left her unable to work or hold a permanent job. *See id*.

Dr. Ram referred Plaintiff to Dr. James Hyla, a rheumatologist, who examined her on October 29, 2004. *See* AR at 180. Plaintiff reported diffuse pain, including headaches, upper arm discomfort, upper back cramping, and trouble sleeping. *See id*. Dr. Hyla concluded that, although Plaintiff experienced tenderness, her peripheral joints were normal and she had "excellent" range of motion. *See id*. at 181. Plaintiff returned to Dr. Hyla on July 6, 2005. *See id*. at 262. The examination revealed that Plaintiff had full range of motion of all her peripheral joints but that she also had tender points. *See id*. Dr. Hyla pointed to fatigue as the major impediment to Plaintiff's functioning and opined that she would be disabled under the regulations due to her fatigue. *See id*.

### III. DISCUSSION

**A.     Standard of Review**

*1. Substantial evidence*

Absent legal error, a court will uphold the Commissioner's final determination if there is substantial evidence to support it. *See* 42 U.S.C. § 405(g). The Supreme Court has defined substantial evidence to mean "'more than a mere scintilla'" of evidence and "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted).

> However, where the court has
>
> "a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."

*Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998) (quotation omitted).


*2. Five-step determination of disability*

To be eligible for DIB, a claimant must show that she suffers from a disability within the meaning of the Act. The Act defines "disability" as an inability to engage in substantial gainful activity ("SGA") by reason of a medically determinable physical or mental impairment that can be expected to cause death or last for twelve consecutive months. *See* 42 U.S.C. § 1382c(a)(3)(A). To determine if a claimant has sustained a disability within the meaning of the Act, the ALJ follows a five-step process:

> 1) The ALJ first determines whether the claimant is engaged in SGA.

>*See* 20 C.F.R. §§ 416.920(b), 416.972. If so, the claimant is not disabled. *See* 20 C.F.R. § 416.920(b).
>
>2) If the claimant is not engaged in SGA, the ALJ determines if the claimant has a severe impairment or combination of impairments. *See* 20 C.F.R. § 416.920(c). If not, the claimant is not disabled. *See id*.
>
>3) If the claimant has a severe impairment, the ALJ determines if the impairment meets or equals an impairment found in the appendix to the regulations (the "Listings"). If so, the claimant is disabled. *See* 20 C.F.R. § 416.920(d).
>
>4) If the impairment does not meet the requirements of the Listings, the ALJ determines if the claimant can do her past relevant work. *See* 20 C.F.R. § 416.920(e). If so, she is not disabled. *See id*.
>
>5) If the claimant cannot perform her past relevant work, the ALJ determines if she can perform other work, in light of her RFC, age, education, and experience. *See* 20 C.F.R. § 416.920(f), (g). If so, then she is not disabled. *See id*. A claimant is only entitled to receive disability benefits if she cannot perform any alternative gainful activity. *See id*.

For this test, the burden of proof is on the claimant for the first four steps and on the Commissioner for the fifth step, if the analysis proceeds that far. *See Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998) (quotation and other citations omitted).

**B.  The ALJ's weight assessment of Dr. Ram's and Dr. Hyla's opinions**

The ALJ must give controlling weight to the opinion of a treating physician where it is "'supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record.'" *Audi v. Astrue*, No. 07-CV-1220, 2009 WL 3199481, *13 (N.D.N.Y. Sept. 30, 2009) (quoting *Anderson v. Astrue*, 2009 WL 2824584, at *9 (E.D.N.Y. Aug. 28, 2009)); *see also* 20 C.F.R. § 404.1527(d)(2). Usually, "'the opinion of the

treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with . . . the opinions of other medical experts, for [g]enuine conflicts in the medical evidence are for the Commissioner to resolve.'" *Arruda v. Comm'r of Soc. Sec.*, 363 Fed. Appx. 93, 95 (2d Cir. 2010) (quotation and other citation omitted). Where a treating physician's opinion conflicts with other substantial evidence in the record, the ALJ will not consider it controlling; and the less consistent the opinion is with the record as a whole, the less weight the ALJ will give it. *See Snell v. Apfel* 177 F.3d 128, 133 (2d Cir. 1999) (citation omitted). Moreover, although the ALJ should consider treating source opinions that state whether a claimant has a disability, those opinions are not entitled to controlling weight or special significance. *See* Social Security Ruling ("SSR") 96-5p, 1996 WL 374183, *5 (July 2, 1996).

If the ALJ does not give controlling weight to a treating physician's medical opinion, the weight he accords that opinion depends on several considerations. *See Audi*, 2009 WL 3199481, at *13 (quotation omitted); *see also* 20 C.F.R. § 404.1527(d)(2). These considerations are "'"(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist."'" *Audi*, 2009 WL 3199481, at *13 (quoting *Anderson v. Astrue*, 2009 WL 2824584, at *9 (E.D.N.Y. Aug. 28, 2009)); *see also* 20 C.F.R. § 404.1527(d)(2). Moreover, the ALJ must "'give good reasons'" for the weight he accords to a treating physician's medical opinion. *See Audi*, 2009 WL 3199481, at *13 (quotation omitted). Finally, where an ALJ finds against the claimant, he must set forth the specific reasons for the weight he assigned to a treating source's opinion. *See* SSR 96-2p, 1996 WL 374188, *5 (July 2, 1996).

The ALJ must develop a claimant's medical history for at least twelve months prior to the filing of an application for benefits and, additionally, must "gather such information for a longer period if there [is] reason to believe that the information [is] necessary to reach a decision." *DeChirico v. Calahan*, 134 F.3d 1177, 1184 (2d Cir. 1998) (citing 42 U.S.C. § 423(d)(5)(B) (as incorporated by 42 U.S.C. § 1382c(a)(3)(G))) (other citation omitted). Specifically, the ALJ has the duty to "recontact" a treating physician for clarification if the treating physician's opinion is unclear and inadequate for the purposes of making a disability determination. *See Mitchell v. Astrue*, No. 07 Civ. 285, 2009 WL 3096717, *24 (S.D.N.Y. Sept. 28, 2009) (citing 20 C.F.R. § 404.1512(e) (stating that, "[w]hen the evidence we receive from your treating physician . . . is inadequate for us to determine whether you are disabled, we will need additional information to reach a determination or a decision")).

In the instant matter, the ALJ appropriately weighed the medical evidence in the record. First, the ALJ correctly chose not to give controlling weight to Dr. Ram's and Dr. Hyla's opinions because they were not consistent with other medical opinions in the record. Dr. Ram found that Plaintiff could only perform at a less than sedentary exertion level and had no ability to lift. *Compare* AR at 249-55 (setting forth Dr. Ram's opinion regarding Plaintiff's limitations), *with* SSR 83-10, 1983 WL 31251, *5 (1983) (defining sedentary work). Dr. Hyla opined that Plaintiff was disabled based on her fatigue, not on any abnormal joint pathology. *See* AR at 262. These opinions do not find consistent support in the rest of the medical record. For example, Dr. Dolorico found that Plaintiff experienced no range of motion restrictions in her upper and lower extremities, and Dr. Braiman stated that Plaintiff's carpal tunnel syndrome and cervical radiculopathy were "mild to moderate." *See id*. at 107, 110. In addition, Dr. Harley determined that Plaintiff had good range of

-9-

motion and good nerve sensation; and Dr. Frederickson concluded that Plaintiff possessed good cervical range of motion and a normal gait. *See id*. at 163, 168. Dr. Ram's and Hyla's opinions are also inconsistent with each other. Both doctors found Plaintiff to be disabled, but for different reasons; Dr. Ram thought the disability was due to physical limitations related to Plaintiff's fibromyalgia, and Dr. Hyla thought it was due to fatigue. *See* AR at 196, 262.

After deciding not to grant controlling weight to Dr. Ram's and Dr. Hyla's opinions, the ALJ properly assigned little weight to them. In addition to inconsistency with medical opinions noted above, Dr. Ram's and Dr. Hyla's opinions were inconsistent with other portions of the record as a whole.[1] For example, the ALJ noted that Plaintiff did not report fatigue at a consultative exam in July of 2005. *See* AR at 20. At her hearing, Plaintiff indicated that she napped only occasionally. *See id*. at 305-06. In addition, Plaintiff stated to a consultative physician that she could perform household chores and self-care, as well as shop, drive, and manage money. *See id*. at 266. These activities require at least some ability to lift, sit, stand, and concentrate.

Finally, the ALJ met his obligation to develop the record. The record contained medical opinions from multiple acceptable medical sources, such as Drs. Ram, Hyla, Dolorico, Braiman, Frederickson, and Harley. *See generally* AR. These medical records date back to March 31, 2002. *See* AR at 100. The ALJ therefore met his obligation to compile Plaintiff's medical history beginning twelve months before the date of filing for benefits, which, in this case, was May 10,

---

[1] Plaintiff cites *Balsamo* for the proposition that an ALJ cannot reject a medical opinion because it conflicts with that physician's clinical notes. *See* Dkt. No. 5 at 18. However, that decision holds that an ALJ cannot reject a medical opinion "*solely*" for this reason. *See Balsamo*, 142 F.3d at 80 (emphasis added). Here, Dr. Ram's and Dr. Hyla's opinions conflicted with the record as a whole, not just with their own treatment notes.

2004. *See id.* at 43. Moreover, there is no indication that the medical opinions in the record were unclear for the purposes of making a disability determination; in fact, the ALJ seemed quite confident in his analysis of the various medical opinions' merits. *See* AR at 20.

Accordingly, the Court finds that the ALJ properly weighed the medical evidence in the record and fully developed Plaintiff's medical history.

### C.     The ALJ's RFC determination

When assessing a plaintiff's RFC, the ALJ "must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis. . . . Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8p, 1996 WL 374184, *1 (July 2, 1996). To this end, the ALJ must assess a plaintiff's ability "to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, and pulling." *Id.* at *5. Moreover, the ALJ "must discuss the [plaintiff's] ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule) . . . , and describe the maximum amount of each work-related activity the individual can perform . . . ." *Id.* at *7 (internal footnotes omitted).

Where the ALJ fails to assess a plaintiff's "exertional and postural abilities on a function-by-function basis, his RFC determination cannot be upheld . . . ." *Hilsdorf v. Comm'r of Soc. Sec.*, 724 F. Supp. 2d 330, 349 (E.D.N.Y. 2010) (citation omitted); *see also Brown v. Barnhart*, No. 01-CV-2962(JG), 2002 WL 603044, *5-*6 (E.D.N.Y. Apr. 15, 2002) (holding that the ALJ's RFC determination was inadequate because he did not evaluate the plaintiff on a "function-by-function"

basis or determine the plaintiff's ability to work on a "regular and continuing" basis).

However, where the ALJ does not explain his rationale for a particular decision, courts may "look to other portions of the ALJ's decision and to clearly credible evidence," in order to determine if substantial evidence supports the ALJ's conclusion. *Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir. 1982).

In the instant matter, the ALJ explicitly provided guidelines for every strength demand except standing/walking. Notably, the ALJ's decision cited the Medical-Vocational guidelines at 202.18 and 202.19. *See* AR at 21. These rules discuss light work capabilities. *See* 20 C.F.R. Part 404, Subpart P, Appendix 2, § 202.00, § 202.18, § 202.19. Light work, by definition, involves standing or walking for up to six hours during an eight-hour workday. *See* SSR 83-10, 1983 WL 31251, *5-*6 (1983). Consequently, there is a clear implication that the ALJ determined that Plaintiff could stand/walk for at least six hours during an eight-hour workday.[2]

Accordingly, the Court upholds the ALJ's RFC determination.

**D.     The ALJ's step-four determination**

At step four of the five-step analysis, the burden is on the claimant to prove that her limitations render her unable to perform her past relevant work. *See Monette v. Astrue*, 269 Fed. Appx. 109, 111 (2d Cir. 2008). The ability to perform past work "may be indicative of the capacity to engage in SGA when that work experience constituted SGA and has current relevance considering duration and recency." SSR 82-62, 1982 WL 31386, *2 (1982). It is the responsibility

---

[2] Furthermore, as the Court has previously discussed, the ALJ appropriately discounted Dr. Ram's and Dr. Hyla's opinions and, consequently, was under no obligation to incorporate them into his RFC determination.

of the ALJ to determine the plaintiff's RFC. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e); *see also*, SSR 85-16, 1985 WL 56855, *2 (1985). To determine if a plaintiff is capable of performing past work, the ALJ must compare the plaintiff's current RFC to the demands of her past work. *See* SSR 85-16, at *3; *see also* 20 C.F.R. § 416.920(e); *New York v. Sullivan*, 906 F.2d 910, 913 (2d Cir. 1990). To establish disability at step four, a plaintiff must show that her RFC is incompatible with the performance of her past relevant work either as she had actually performed it or as others generally perform it. *See Shatraw v. Astrue*, No. 7:04-CV-0510, 2008 WL 4517811, *17 (N.D.N.Y. Sept. 30, 2008) (citation omitted).

    Here, as discussed previously, the ALJ properly determined Plaintiff's RFC. *See* AR at 22. It is true that this RFC precludes Plaintiff from lifting more than twenty pounds and that Plaintiff occasionally lifted more than twenty pounds in her previous work as a wallpaper/paint store clerk. *See id.*; Dkt. No. 5 at 23-24. However, this work is classified as light work; and, as it is generally performed, it does not require a clerk to lift more than twenty pounds. *See* SSR 83-10, 1983 WL 31251, *5 (1983). Therefore, it was appropriate for the ALJ to concur with the conclusion of the VE that Plaintiff could return to her previous work as a wallpaper/paint store clerk.[3] *See* AR at 20. The ALJ reasoned that, given Plaintiff's RFC, she could perform light, semi-skilled work, so long as it did not involve repetitive computer use. *See id*.

---

[3] The ALJ also provided a rationale for discounting Plaintiff's credibility, which he found to be "fair." *See* AR at 19. In the same paragraph in which he discussed Plaintiff's overall credibility, the ALJ described Plaintiff's daily activities. *See id*. These activities included scrubbing the floors on her hands and knees, cooking, cleaning, washing laundry, performing physical therapy exercises, and shopping. *See id*. The clear implication is that the ALJ found Plaintiff's statements regarding the severity of her limitations to be less than entirely credible in light of her daily activities. Since daily activities are an important indicator of credibility under the regulations, this is an appropriate analysis on the part of the ALJ. *See* 20 C.F.R. § 416.929(c)(3)(i)-(vii); *see also* SSR 96-7p, 1996 WL 374186, *3 (July 2, 1996).

Accordingly, the Court affirms the ALJ's step-four determination.

**E.     The ALJ's reliance on the VE's analysis at step five**

A VE's testimony will not constitute substantial evidence to support an ALJ's decision where the ALJ relies on a VE's testimony regarding a hypothetical claimant whose limitations do not mirror the plaintiff's. *See Aubeuf v. Schweiker*, 649 F.2d 107, 114-15 (2d Cir. 1981); *see also Gilliam v. Califano*, 620 F.2d 691, 693-94 (8th Cir. 1980) (holding that a VE's testimony was "fatally deficient" where the hypothetical question did not identify all of the claimant's limitations (citations omitted)).

However, where the ALJ hears a VE's findings, and where the hypothetical that the VE considers corresponds to a plaintiff's RFC, "[t]he Commissioner may rely on a vocational expert's testimony concerning the availability of jobs suited to a hypothetical person's capabilities so long as the hypothetical is based on substantial evidence." *Mancuso v. Astrue,* 361 Fed. Appx. 176, 179 (2d Cir. 2010) (citation omitted).

In this case, at step five of his analysis, the ALJ noted that the Medical-Vocational Rules did not direct a conclusion of disabled or not disabled since Plaintiff's RFC consisted of non-exertional, as well as exertional, limitations. *See* AR at 21. As a result, the ALJ consulted a VE to determine what, if any, work Plaintiff could perform. *See* AR at 21, 309. The VE considered Plaintiff's age, educational background, employment history, and the limitations set forth in Plaintiff's RFC. *See* AR at 309-11. Based on these considerations, the VE opined that Plaintiff could perform the following jobs: usher/lobby attendant, photocopy machine operator, and film rental clerk. *See* AR at 314. The VE also considered the hypothetical that Plaintiff's counsel posed, involving a claimant

with Plaintiff's RFC and severe pain that interfered with concentration, required the claimant to elevate her legs six to eight inches 100% of the time, prevented the claimant from sitting or standing for more than fifteen minutes at a time, and required claimant to shift positions and take breaks on a frequent basis. *See id.* at 318-19. The VE opined that someone with those difficulties would not be able to perform any work in the national economy. *See id.* at 319. The ALJ reasoned that nothing in the record suggested that Plaintiff experienced the limitations suggested in the hypothetical that Plaintiff's counsel proposed and, therefore, rejected that hypothetical. *See id.* The ALJ instead adopted the VE's analysis of the hypothetical that he had presented to the VE and found that Plaintiff was not disabled. *See id.* at 21.

The hypothetical that the ALJ posed to the VE treated Plaintiff's condition in a manner consistent with Plaintiff's properly-determined RFC. *See* AR at 22, 309-11. Therefore, under the holding in *Mancuso*, the ALJ's analysis was correct. Alternatively, substantial medical evidence in the record does not support the proposition that Plaintiff experiences the limitations described in the hypothetical that Plaintiff's counsel proposed; and the ALJ was therefore correct not to rely on it. *See Aubeuf*, 649 F.2d at 114-15. Accordingly, the Court finds that the ALJ properly relied on the VE's analysis of the hypothetical that the ALJ posed.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's motion for judgment on the pleadings is **DENIED**; and the Court further

  **ORDERS** that Defendant's motion for judgment on the pleadings is **GRANTED**; and the Court further

  **ORDERS** that the Commissioner's decision is **AFFIRMED** and Plaintiff's complaint is **DISMISSED**; and the Court further

  **ORDERS** that the Clerk of the Court shall enter judgment in favor of Defendant and close this case.

**IT IS SO ORDERED.**

Dated: February 22, 2011
   Syracuse, New York

                _____
                Frederick J. Scullin, Jr.
                Senior United States District Court Judge